STATE of Wisconsin, Plaintiff-Respondent,

v.

James Lee HARRIS, Defendant-Appellant.†

Court of Appeals

*No. 91-2604-CR. Submitted on briefs January 14, 1992.—Decided March 17, 1992.*

(Also reported in 483 N.W.2d 808.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney,* assistant state public defender, of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Paul Lundsten,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J., Harris appeals from an order denying him 148 days of sentence credit under sec. 973.155, Stats. (sentence credit) for time he claims he served in a home detention program under sec. 302.425, Stats. (home detention programs). We determine that the sentence credit statute does not apply to instances where a prisoner is placed in a home detention program under a federal consent decree and therefore affirm.

## I.

On October 5, 1989, Harris was arrested and charged with possession of a firearm by a felon, criminal trespass to a dwelling, and criminal damage to property, pursuant to secs. 941.29(2), 943.14, and 943.01(1), Stats., respectively. On October twelfth he was released on cash bail. After failing to appear for a scheduled court date, Harris was eventually returned to the court on a bench warrant. Harris was placed into a home detention program on August 29, 1990. Harris entered a plea of guilty on October 31, 1990, and was convicted of one felony and two misdemeanors.[1]

Harris was placed into a home detention program as a result of a federal consent decree arising out of overcrowding conditions in the Milwaukee county jail.[2]

---

[1] On the felony conviction, possession of a firearm by felon, Harris was sentenced to two years in a Wisconsin state prison and received 42 days of credit for time served. For the criminal trespass to a dwelling conviction, Harris was sentenced to nine months in the House of Correction, consecutive to the felony charge. On the criminal damage to property conviction, Harris was sentenced to nine months in the House of Correction consecutive to the other misdemeanor offense. On each misdemeanor conviction, the court stayed each sentence and placed Harris on three years probation concurrent to each other.

[2] *See Jackson v. Artison*, No. 88-C-64 (E.D. Wis. July 19, 1990) and *Williams-EL v. Artison*, No. 87-C-1128 (E.D. Wis. July 19, 1990). A consent decree between prisoners, the Milwaukee County Jail and the sheriff required a Special Master to release a sufficient number of prisoners to reduce the jail population to 459 or less. Paragraph seven of the decree further stated that a "Special Master shall choose between the following release means: a) Electronic Bracelet Security Release Program, or b) Other means for release on the mutual agreement of counsel for the parties."

Under the supervision of the Community Corrections Center (CCC), Harris was required to remain at home twenty-four hours a day, except to: (1) consult with his legal counsel; (2) meet scheduled court appearances; and (3) meet his weekly required CCC appointments.[3] Harris was on home detention for 148 days, from August 29, 1990 to January 24, 1991.

At the time of sentencing on January 24, 1991, Harris requested of the sentencing court credit for the 148 days he participated in the home detention program under federal consent decree. The trial court denied his motion for sentence credit on the basis that the consent decree created an authority for the release of Harris independent of Wisconsin statutory law; therefore, the sentence credit statute did not apply. Harris appeals from this order.

The sole issue on appeal is whether sec. 302.425, Stats. (home detention programs)[4] applies, and if so,

---

[3]The home detention monitoring system consisted of a device attached to Harris' telephone with a corresponding bracelet attached to Harris' wrist. When CCC telephoned Harris' home to verify his whereabouts, Harris had ten seconds to hook his bracelet into the telephone device and recite into the telephone his name and the time of day.

[4]The home detention program statute, in its entirety, states:

**302.425 Home detention programs. (1)** DEFINITION. In this section, "jail" includes a house of correction and a Huber facility under s. 303.09.

(2) SHERIFF'S GENERAL AUTHORITY. Subject to the limitations under sub. (3), a county sheriff may place in the home detention program any person confined in jail who has been arrested for, charged with, convicted of or sentenced for a crime. The sheriff may transfer any prisoner in the home detention program to the jail.

(3) PLACEMENT IN THE PROGRAM. If a prisoner described under sub. (2) and the department agree, the sheriff may place the prisoner in the home detention program and provide that the prisoner be detained at the prisoner's place of residence or other place designated

whether Harris was "in custody" for purposes of sec. 973.155, Stats. (sentence credit).[5]

Harris argued at trial and on appeal that he was released from prison by the Sheriff and then released to

by the sheriff and be monitored by an active electronic monitoring system. The sheriff shall establish reasonable terms of detention and ensure that the prisoner is provided a written statement of those terms, including a description of the detention monitoring procedures and requirements and of any applicable liability issues. The terms may include a requirement that the prisoner pay the county a daily fee to cover the county costs associated with monitoring him or her.

(4) DEPARTMENTAL DUTIES. The department shall ensure that electronic monitoring equipment units are available throughout the state on an equitable basis. If a prisoner is chosen under sub. (3) to participate in the home detention program, the department shall install and monitor electronic monitoring equipment. The department shall charge the county a daily per prisoner fee to cover the department's costs for these services.

(5) STATUS. (a) Except as provided in par. (b), a prisoner in the home detention program is considered to be a jail prisoner but the place of detention is not subject to requirements for jails under this chapter.

(b) Sections 302.36, 302.37 and 302.375 do not apply to prisoners in the home detention program.

(6) ESCAPE. Any intentional failure to remain within the limits of his or her detention or to return to his or her place of detention, as specified in the terms of detention under sub. (3), is considered an escape under s. 946.42(3)(a).

(7) COURT-ORDERED DETENTION. This section does not apply to persons sentenced under s. 973.04.

[5]The sentence credit statute in relevant part provides:

**973.155 Sentence credit. (1)(a)** A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct.

the Special Master[6] under the authority granted to the Sheriff by sec. 302.425(2), Stats. (sheriff's general authority). Harris concludes that since he was released by the Sheriff, he falls within the home detention program statute, sec. 302.425, was in custody for purposes of the sentence credit statute and is therefore entitled to a credit of 148 days served in the home detention program.

The State argues that Harris was released by the Special Master pursuant to a consent decree approved by the federal district court for the Eastern District of Wisconsin. The State asserts that the consent decree plainly gives the Special Master direct authority to release prisoners for home detention, independent of Wisconsin state statutes.[7] We agree.

## II.

A cursory examination of the facts and law of this case leads one to assume that Harris is a participant of the home detention program under sec. 302.425, Stats. Harris was subjected to an electronic monitoring system under the consent decree, the same monitoring system required by statute. However, the fact that Harris is subjected to the same controls of monitoring under both the statute and consent decree does not give him a "jail prisoner" status under sec. 302.425(5), Stats., which provides that "a prisoner in the home detention program is considered to be a jail prisoner."

---

[6]See Fed. R. Civ. P. 53 for the origin of "Special Master."

[7]The consent decree stated:

The Special Master shall be empowered at any time during the life of this consent decree to release inmates utilizing the means noted in paragraph 7 above to maintain compliance with paragraphs 1-5 above.

The home detention program under the state statute and federally approved consent decree are two parallel and independent means of monitoring prisoners outside traditional incarceration institutions. There is no authority to grant Harris credit for time served in the home detention program under the auspices of the consent decree. An adoption of the rule Harris seeks this court to invoke must be adopted, if at all, by the legislature. *State ex rel. Town of Caledonia v. Racine County,* 78 Wis. 2d 429, 434, 254 N.W.2d 317, 320 (1977) (it is a function of the legislature, not the courts, to remedy the effect of judicial practices which may be unwise, yet comply with existing law).

Since Harris' status as a home detainee is not one of a "jail prisoner," we need not address the issue of whether a jail prisoner is "in custody" for purposes of the sentence credit statute. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (dispositive issue excuses determination of remaining issues), *review denied.*

*By the Court.*—Order affirmed.